Filed 12/30/25  P. v. Price CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TRACY ANDREW PRICE, <br><br> Defendant and Appellant. | D086606 <br><br><br> (Super. Ct. No. FWV22003700) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Steven J. Singley, Judge.  Affirmed.

Pauline E. Villanueva, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Tracy Andrew Price of 10 counts of committing a lewd act upon Jane Doe, a child under the age of 14 years. (Pen. Code,[1] § 288, subd. (a).) The trial court sentenced Price to 26 years in prison.

Price contends that the trial court prejudicially abused its discretion in admitting evidence of his years-long molestation of a different victim, his stepdaughter, because the evidence should have been excluded pursuant to Evidence Code section 352. Price further contends that the trial court prejudicially erred by including certain language in the jury instruction defining the crime of committing a lewd act upon a child.

We conclude that Price's contentions are without merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Jane Doe was born in 1978. According to Jane Doe's trial testimony, in 1989 or 1990, when she was approximately 11 or 12 years old, her mother was a drug addict who used drugs with Price. Price was in his mid-twenties at the time. In exchange for drugs, Jane Doe's mother agreed to let Price take Jane Doe, alone, to his house. At Price's house, Jane Doe and Price would use methamphetamine together and engage in sexual conduct. The arrangement lasted for approximately one year. Several times a week, Jane Doe would spend time with Price, during which they engaged in lengthy "make out" sessions, which included kissing, "dry humping" (i.e., grinding their genitals together while clothed), and using their hands to feel each other's clothed bodies. On some occasions, Price would also orally copulate

_____

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2

Jane Doe. Jane Doe could not remember whether Price ever had sexual intercourse with her. Jane Doe thought of Price as her boyfriend.

Near the end of his relationship with Jane Doe, Price moved into an apartment with his girlfriend, K.B., whom he later married. At the time, K.B. had three young children, including one five-year old daughter (born in 1985), who later became Price's stepdaughter (Stepdaughter). According to Jane Doe, as an excuse for why Price was bringing Jane Doe over to the apartment, Price told K.B. that Jane Doe was babysitting K.B.'s children.

Jane Doe testified that her relationship with Price ended when Price handed her off to another man, Scott, who supplied drugs to Price. Jane Doe then began to think of herself as Scott's girlfriend. The last time Jane Doe had any contact with Price was more than three decades ago, when she was approximately 13 years old.

In January 2022, Stepdaughter reported to the police in the "small" Nevada town where she had moved with her mother and Price at age eight or nine that Price had sexually molested her throughout her childhood. In March 2022, K.B. contacted Jane Doe, whom she remembered as the babysitter, to ask if Jane Doe had observed any inappropriate behavior by Price toward Stepdaughter. Jane Doe disclosed to K.B. that she had also been molested by Price. Weeks later, Jane Doe decided to report to police that Price had molested her.

Police interviewed Price in October 2022. Price remembered Jane Doe, whom he said was his babysitter. According to Price, Jane Doe acted inappropriately toward him and "threw herself" at him four to five times. Among other things, Price stated that Jane Doe "dry hump[ed]" him while he was asleep on the couch in response to which he pushed her off; tried to get into the shower with him; and offered to have sex with him for money. Price

3

stated that although Jane Doe was "cute" and "had all the guys' attention," he refused her advances and did not engage in sexual activity with her.

Based on his molestation of Jane Doe, Price was charged with 10 counts of committing a lewd act upon a child under the age of 14 years between June 22, 1989 and June 21, 1992. (§ 288, subd. (a).)

At trial, the jury heard testimony from Stepdaughter about Price's molestation of her, which the trial court ruled was admissible pursuant to Evidence Code, section 1108. Stepdaughter testified that starting when she was nine or 10 years old, Price would caress her and put his finger inside her vagina. That conduct took place on a weekly basis until she was 17 years old. Price engaged in other inappropriate touching of Stepdaughter on a regular basis throughout the same time period, such as trying to kiss her, grazing her breasts, touching her buttocks and rubbing her thighs.

On two dates, according to Stepdaughter, Price raped her. The first rape took place when Stepdaughter was 11 or 12 years old. K.B. was out of town, and Price demanded that Stepdaughter come to his bed, where he raped her several times throughout the night. The second rape occurred when Stepdaughter was 15 years old and K.B. was at work. Price sat next to Stepdaughter on the bed, told her that he loved her so much, and then kissed and raped her. Stepdaughter became pregnant after the second rape, but then miscarried at around three months into the pregnancy. Because Stepdaughter had sexual intercourse with her boyfriend before Price's rape, she was not sure whether Price's rape was the cause of the pregnancy.

Stepdaughter explained during her testimony that when she was 15 years old, she told a friend about the rape, which led to a police detective coming to her house to speak with her, K.B. and Price. The detective, who acted like he was "buddies" with Price, looked at Stepdaughter and said,

4

"[H]ow could you say something about a man like this," and "Tracy Price would never do such a thing."

According to Stepdaughter, she decided to report the molestation to police in 2022 because Price contacted her for the first time in 10 years in December 2021, after she had asked him not to do so. Price's act of contacting her in 2021 "horrified" Stepdaughter, made her feel like she was being stalked, and put her in fear for her own daughter.

At trial, K.B., who divorced Price in 2012, testified to facts related to her interactions with Jane Doe around 1991, as well as to facts related to Price's molestation of Stepdaughter. K.B. remembered that when the police detective came to the house when Stepdaughter was 15 years old, both Price and the detective insisted that Stepdaughter was lying, so Stepdaughter finally said, "Fine, I'm lying." K.B. also described Stepdaughter's extreme negative emotional reaction to Price's act of contacting her in December 2021.

Further, the jury heard testimony from a woman who was married to Price from 2014 to 2020. According to that witness, Price told her multiple times that he had engaged in sexual activity with Stepdaughter, starting at the age of 13 or 14.

Price testified at trial. He denied sexually abusing either Jane Doe or Stepdaughter. Price repeated the claim that Jane Doe climbed on him once while he was asleep, and he explained that in response, he pushed her off "rather hard, rather forcefully." During his testimony, Price confirmed the visit from the police detective, with whom he was acquainted, after Stepdaughter's report of a rape when she was 15 years old. According to Price, Stepdaughter told the detective that she lied.

5

The jury convicted Price on all 10 counts as charged. After conducting a bench trial on four alleged aggravating factors, which it found to be true, the trial court sentenced Price to a prison term of 26 years.

## II.

## DISCUSSION

A.  *Price's Contention That the Evidence Regarding His Molestation of Stepdaughter Should Have Been Excluded Pursuant to Evidence Code Section 352.*

We first consider Price's contention that the trial court prejudicially erred by admitting evidence that he molested Stepdaughter.

Under Evidence Code section 1101, subdivision (a), unless an exception applies, evidence of a person's character, including evidence of specific instances of past conduct, is inadmissible when offered to prove the person's conduct on a specified occasion. One exception is set forth in Evidence Code section 1108, subdivision (a), which provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).) Thus, "Evidence Code section 1108 by its terms establishes an exception to the general rule against admitting propensity evidence, ' "provid[ing] the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." ' [Citation.] But the statute also calls for exclusion under Evidence Code section 352 if the trial court, in its discretion, concludes evidence of prior sex crimes is unduly prejudicial." (*People v. Rhoades* (2019) 8 Cal.5th 393, 412 (*Rhoades*).)

During motions in limine the People moved pursuant to Evidence Code sections 1108 to admit evidence of Price's molestation of Stepdaughter. In

6

their motion in limine, the People described Price's molestation of Stepdaughter as follows: "[K.B.'s] daughter, (who is approximately seven years younger than the victim) reported to Nevada authorities that she was also sexually abused by [Price]. [Stepdaughter] told police the grooming began almost immediately upon him coming into her life in approximately 1992 and quickly grew into him touching her thighs while complimenting her and touching her breast and butt when he thought she was asleep. [Stepdaughter] specifically remembers these incidents occurring when she was ten-years old. At the age of 12, [Price] went into [Stepdaughter's] room, laid on top of her, held her breast and kissed her. [Stepdaughter] stated this conduct continued but ramped up to include digital penetration of her vagina and eventually at the age of 14—rape. While [Stepdaughter]'s mother was out of town, [Price] raped [Stepdaughter] several times over the course of a weekend." At the in limine hearing, the People added that Stepdaughter would also testify that Price offered her drugs on at least one occasion by holding up a bag of cocaine and saying " 'We're going to use this next time we have sex.' " The People did not describe a second rape, or that the rape may have resulted in a pregnancy and miscarriage. The People also did not describe Stepdaughter's report of the rape to a friend when she was 15 years old, the police detective's visit to the family home in response, or the police detective's insistence that Stepdaughter was lying. The appellate record does not reveal whether those facts were known to counsel at the time of the in limine hearing, or whether they were developed for the first time during the trial testimony.

In opposition, defense counsel did not dispute that Price's alleged molestation of Stepdaughter constituted "another sexual offense or offenses" within the scope of Evidence Code section 1108. However, defense counsel

7

argued that the evidence should be excluded pursuant to Evidence Code section 352 because it was more inflammatory than the allegations regarding Jane Doe, would confuse the jury, was not probative because it was remote in time, and would consume an undue amount of time at trial. In arguing that the evidence regarding Stepdaughter was more inflammatory than the allegations regarding Jane Doe, defense counsel did not provide any additional details about Stepdaughter's expected testimony regarding Price's molestation.[2] Further, defense counsel's argument regarding the inflammatory nature of the evidence focused solely on the fact that the molestation was directed to a victim who was Price's stepdaughter, as opposed to Jane Doe, who was not a family member.

The trial court rejected Price's contention that the evidence should be excluded, based on the following analysis:

> "Turning to [Evidence Code section] 352, the Court makes the following findings: With respect to remoteness of time, the Court finds the [Evidence Code section] 1108 evidence is no more remote in time necessarily than the charged offense. The Court is also mindful of the fact that these types of cases under the new law relative to the statute of limitations being changed often contain[] evidence that is remote in time.

> "The Court also finds that the charged acts and the uncharged acts are strikingly similar.

> "The Court further finds that with respect to consumption of time, the [Evidence Code section] 1108 witnesses will not

---

[2] During the in limine hearing, in the course of explaining the amount of trial time that would be associated with the evidence regarding Stepdaughter, defense counsel told the trial court that Stepdaughter claimed to have gone to the police in Nevada when she was 15 years old. Defense counsel explained that he planned to present testimony from a Nevada police officer that he did not locate any records of such a report. However, defense counsel did not explain anything about the police detective's investigation at that time or any alleged interference by Price.

8

result in an undue consumption of time[,] noting they will likely constitute in the neighborhood of 30 maybe 35 percent of the prosecution's case in chief.

"With respect to the inflammatory nature of the [Evidence Code section] 1108 conduct, the Court has already indicated: It's very similar to the charged conduct. It doesn't strike the Court as being any more or any less inflammatory. The fact that the [Evidence Code section] 1108 victim, alleged victim, was . . . [Price's] stepdaughter does not necessarily result in the information being more inflammatory. Both alleged victims were minor children who [Price] had frequent access to with their parents' permission. So the Court does not find that the [Evidence Code section] 1108 evidence is unduly prejudicial under [Evidence Code section] 352. I will allow the evidence . . . ."

Price contends that the trial court erred when it failed to exclude the evidence pursuant to Evidence Code section 352 and, in so doing, violated his federal constitutional right to due process.

1.    *Applicable Legal Standards*

" 'By reason of [Evidence Code] section 1108, trial courts may no longer deem "propensity" evidence unduly prejudicial per se,' but trial courts 'must engage in a careful weighing process under [Evidence Code] section 352.' " (*People v. Dworak* (2021) 11 Cal.5th 881, 900 (*Dworak*).) Evidence Code section 352 states that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) " 'Evidence is substantially more prejudicial than probative . . . [only] if, broadly stated, it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome." ' " (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.) " ' " ' "Evidence is not prejudicial, as that term is used in a section 352 context, merely because it

9

undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of *undue* prejudice. Unless the dangers of undue prejudice, confusion, or time consumption ' "substantially outweigh" ' the probative value of relevant evidence, a section 352 objection should fail." ' " ' " ' " (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 824.)

The application of Evidence Code section 352 in the context of evidence that falls within the scope of Evidence Code section 1108 " ' "is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence." ' " (*Dworak, supra*, 11 Cal.5th at p. 900.) Our Supreme Court has "instructed that the trial court's determination should be guided by such factors as the 'nature, relevance, and possible remoteness' of the evidence, 'the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.' " (*Ibid.*)

"Like any ruling under section 352, the trial court's ruling admitting evidence under section 1108 is subject to review for abuse of discretion." (*People v. Story* (2009) 45 Cal.4th 1282, 1295.) " ' "Under the abuse of discretion standard, 'a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 26.)

2.    *The Trial Court Did Not Abuse Its Discretion*

Price contends that the evidence relating to Stepdaughter should have been excluded "because its dissimilarity to the charged offense reduced any probative value it might have" and because "the facts surrounding the uncharged offenses had the high potential for prejudice and leading the jury to improperly punish [Price] for the uncharged offenses."

a.    *The Probative Value of the Evidence*

We turn first to Price's contention that the evidence relating to Stepdaughter lacked significant probative value because of its purported dissimilarity to the allegations concerning Jane Doe. "Admissibility under Evidence Code section 1108 does not require that the sex offenses be similar; it is enough the charged offense and the prior crimes are sex offenses as defined by the statute." (*People v. Jones* (2012) 54 Cal.4th 1, 50.) Nevertheless, "the probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*).)

Here, based on the description of Price's alleged molestation of Stepdaughter that was presented to the trial court at the time it ruled on the motion in limine, it was reasonable for the trial court to conclude that the charged acts and the uncharged acts were similar enough to have probative value. The sexual conduct directed to both Jane Doe and Stepdaughter started when they were preteens. Specifically, Price's sexual relationship with Jane Doe started when she was 11 or 12. Similarly, as described in the People's offer of proof, Price started lying on top of Stepdaughter, touching her breasts and kissing her when she was 12 years old. Moreover, as the prosecutor pointed out at the motion in limine hearing, in addition to the similarity in the victims' ages, "[t]hey are both, I would say, daughter-type figures. [Jane Doe] knows [Price] because her mom was friends with [Price].

11

So although they never dated, [Price] was in her life . . . ." Based on these considerations, the trial court could reasonably conclude that the evidence relating to Stepdaughter had substantial probative value because it tended to show that Price had a propensity to engage in sexual conduct with preteen girls, and that he followed the approach of gaining access to his victims through a relationship with their mothers.

The probative value of 'other crimes' evidence is also "increased by . . . the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense." (*Falsetta, supra*, 21 Cal.4th at p. 917.) Both circumstances are present here. First, Price's molestation of Jane Doe and Stepdaughter occurred very close in time. Jane Doe was born in 1978, and was molested starting when she was 11 or 12 years old, in approximately 1989 or 1990. Stepdaughter was born in 1985 and, according to the People's in limine motion, "[Stepdaughter] told police the grooming began almost immediately upon him coming into her life in approximately 1992," although it became more sexual as she got older. Second, the evidence of the charged and uncharged acts in this case come from independent sources, namely from the separate testimony of Jane Doe and Stepdaughter.

      b.    *The Trial Court Reasonably Concluded That the Risk of Undue Prejudice Did Not Outweigh the Probative Value of the Evidence*

According to Price, any probative value of the evidence was substantially outweighed by prejudice. For one thing, Price contends that "the facts surrounding the uncharged offenses were significantly more inflammatory and egregious than those in the charged offense." Price refers specifically to Stepdaughter's testimony regarding the two rapes; digital penetration over the span of seven years; Price's influence over law enforcement to prevent investigation of Stepdaughter's report of the

12

molestation when she was 15 years old; and Stepdaughter's ongoing emotional trauma evidenced by her reaction to recent contact from Price.

Price goes astray by focusing on Stepdaughter's trial testimony. "In assessing the trial court's evidentiary ruling, we must consider the facts known to the court at the time the ruling was made. [Citations.] Consequently, we look to the prosecution's offers of proof in determining error." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 243 (*Hendrix*).) " 'To do otherwise would require us to hold the trial court to an impossible standard.' " (*People v. Ramos* (2013) 216 Cal.App.4th 195, 208 (*Ramos*).) The evidence actually presented at trial becomes relevant if we conduct a harmless error analysis (*Hendrix*, at p. 243), or if defense counsel renews an objection during trial based on witness testimony that diverges from the offer of proof. (*People v. Homick* (2012) 55 Cal.4th 816, 877 [noting that the trial court's ruling was "correct based on the offer of proof made at the time of its ruling" and that "defendant could have, but did not, request that [the] testimony be stricken or otherwise renew his objection."].)

Here, defense counsel did not renew the objection to Stepdaughter's testimony based on Evidence Code sections 1108 or 352 during trial, although it was defense counsel's burden to do so. (*Ramos, supra*, 216 Cal.App.4th at p. 208 ["To preserve any objection to the evidence based on a deviation from the offer of proof, it was incumbent upon defendant to object at the time the evidence was introduced."]; see also *People v. Champion* (1995) 9 Cal.4th 879, 925 [defendants "should have" brought variations between the offer of proof and the trial testimony to the trial court's attention].) Accordingly, in deciding whether the trial court abused its discretion in making an evidentiary ruling under Evidence Code section 352, we look to the information available to the trial court at the time it ruled, not the evidence

13

that was eventually presented at trial.  (*People v. Fruits* (2016)
247 Cal.App.4th 188, 208.)

" ' "The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." ' " (*People v. Scott* (2011) 52 Cal.4th 452, 491.)  " ' "Evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.  In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." ' "  (*Ibid.*)

Certain aspects of Price's molestation of Stepdaughter, as described in the People's offer of proof, involved more serious sex acts.  Further, the molestation took place over a longer time period, as it lasted throughout Stepdaughter's childhood.  Significantly, the People represented that Stepdaughter would testify Price "raped [her] several times over the course of a weekend."  In contrast, Jane Doe was not able to recall whether she had sexual intercourse with Price.

Despite these differences, the trial court was nevertheless within its discretion to conclude that the evidence regarding Stepdaughter was not so much more inflammatory than the evidence regarding Jane Doe that it would cause the jurors "not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction." (*Scott, supra*, 52 Cal.4th at p. 491.)  The specific facts of the two molestations differ, but both molestations fall into the same general category of ongoing sexual contact with preteen girls without the use of any particular violence

beyond that required for the sex acts themselves. Thus, the trial court could reasonably conclude that jurors would have the same general emotional reaction to one set of facts as to the other. (See *People v. Branch* (2001) 91 Cal.App.4th 274, 283–284 (*Branch*) ["While appellant seems to have engaged in a wider variety of sexual offenses over a longer period of time with Barbara, the nature of the offenses was very similar to the ones involving Sarah. Thus, it is unlikely that the jury would have been so prejudiced against appellant as a consequence of Barbara's 'inflammatory' testimony that he was denied a fair trial."].)

This is not a case such as *People v. Harris* (1998) 60 Cal.App.4th 727, upon which Price relies, where the uncharged act was of an entirely different nature and clearly more aggravated, causing the appellate court to conclude that the trial court abused its discretion in admitting the evidence. (*Id.* at p. 738 [explaining that the evidence regarding the uncharged sexual offense was "inflammatory *in the extreme*" because it involved "a viciously beaten and bloody victim," whereas the defendant was being prosecuted for incidents in which he licked and fondled his victims, without additional violence].) Here, the trial court was within it discretion to assess that the evidence regarding Price's molestation of Stepdaughter was not "any more or any less inflammatory" than acts that Price was alleged to have directed against Jane Doe.

Price next argues that because the uncharged acts involving Stepdaughter occurred decades ago, they were so remote in time that it was difficult for him to defend against them. Specifically, Price contends that "the lengthy passage of time . . . made it essentially impossible for any serious defense to be permitted" because Stepdaughter's claims "were not anchored in any objective evidence and were simply dependent on the credibility of the

15

accuser." However, that argument is flatly contradicted by the relevant evidence that existed in this case. Stepdaughter's allegations were not dependent solely on the credibility of her testimony. Instead, Stepdaughter's allegations were corroborated by K.B., by Price's second wife, and by Price's own admission that Stepdaughter reported to police that he molested her when she was 15 years old. Moreover, defense counsel did not present any information during the in limine motion to suggest that, because Stepdaughter's allegations arose from events that were remote in time, it was especially difficult to defend against them.

Price also contends that evidence regarding Stepdaughter was unduly prejudicial because the jury could conclude that he escaped punishment for that conduct. As case law explains, "If the prior offense did not result in a conviction, that fact increases the danger that the jury may wish to punish the defendant for the uncharged offenses and increases the likelihood of confusing the issues "because the jury [has] to determine whether the uncharged offenses [in fact] occurred." (*Branch, supra*, 91 Cal.App.4th at p. 284.)

At the time the trial court ruled on the motion in limine regarding Price's molestation of Stepdaughter, it knew that Price had not been convicted or punished for that conduct due to the statute of limitations in Nevada.[3] However, during litigation of the motion in limine the trial court was not made aware of Stepdaughter's claim that Price colluded with the police detective to bury her report, at age 15, that Price had molested her.

---

[3] Specifically, the People stated in their motion in limine that "[Stepdaughter] reported the sexual abuse to the local Nevada authorities, however their statute of limitations had already run and a report was taken for 'information purposes' only."

16

Thus, in assessing whether the trial court abused its discretion in its Evidence Code section 352 analysis, we consider the trial court's knowledge that Price was not prosecuted or punished for his conduct toward Stepdaughter, but we do not consider the incident involving the police detective in Nevada. (*Hendrix, supra*, 214 Cal.App.4th 216, 243 ["we must consider the facts known to the court at the time the ruling was made"].)

The fact that Price was not prosecuted and convicted for his molestation of Stepdaughter, if learned by the jury, might increase the danger that the jury would "be tempted to convict [Price] simply to punish him for the other offenses." (*Falsetta, supra*, 21 Cal.4th at p. 917.) Further, without a conviction for Price's molestation of Stepdaughter, the jury's attention would necessarily "be diverted by having to make a separate determination whether defendant committed the other offenses." (*Ibid.*) Nevertheless, in exercising its discretion to conduct the weighing required by Evidence Code section 352, the trial court could still reasonably conclude that the danger of prejudice on those grounds was not so strong as to substantially outweigh the probative nature of evidence that Price molested Stepdaughter.

Finally, Price argues that the amount of time that would be required to present the evidence regarding Stepdaughter should have caused the trial court to exclude the evidence pursuant to Evidence Code section 352. (Evid. Code, § 352 ["The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time . . . ."].) According to Price, "even if the time spent on the uncharged offenses was similar to that spent on the charged offenses, it was nevertheless excessive because of its minimal probative value, but high risk of prejudice." As set forth in the trial court's comments at the in limine hearing, using counsel's estimation of how much

17

trial time would be consumed by the evidence regarding Stepdaughter, the trial court concluded that the evidence would "likely constitute in the neighborhood of 30 maybe 35 percent of the prosecution's case in chief." In light of the probative nature of the evidence regarding Stepdaughter, the trial court was within its discretion to conclude that the trial time associated with the presentation of the evidence did not warrant its exclusion. (See *People v. Escudero* (2010) 183 Cal.App.4th 302, 312 [the trial court did not abuse its discretion in admitting prior sexual offense testimony that consumed " '[r]oughly 53 percent' " of the witnesses testimony when the testimony was "highly probative"].)

In sum, we conclude that the trial court did not abuse its discretion by concluding, pursuant to Evidence Code section 352, that the dangers of undue prejudice, confusion, or time consumption did not substantially outweigh the probative value of the evidence regarding Stepdaughter. Further, because the evidence was properly admitted pursuant to Evidence Code section 352, there is no merit to Price's contention that improper admission of the evidence violated his federal constitutional right to due process. (*Rhoades, supra*, 8 Cal.5th at p. 415 ["Here, we have already held that admission of defendant's prior crimes was not unduly prejudicial under Evidence Code section 352. The admission of the evidence thus did not violate defendant's constitutional rights."].)

B. *Price's Claim of Instructional Error Lacks Merit Because Any Error Was Harmless*

We next consider Price's contention that the trial court committed prejudicial instructional error when it instructed on the crime of committing a lewd act upon a child under the age of 14 years. (§ 288, subd. (a).)

The jury was instructed as follows on the crime of committing a lewd act upon a child under the age of 14 years (§ 288, subd. (a)):

18

"To prove that the defendant is guilty of this crime, the People must prove that:

"1A. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;

"OR

"1B. The defendant willfully caused a child to touch her own body, the defendant's body, or the body of someone else, either on the bare skin or through the clothing;

"2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child;

"AND

"3. The child was under the age of 14 years at the time of the act.

"*The touching need not be done in a lewd or sexual manner*.

"Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required.

"It is not a defense that the child may have consented to the act."

The sentence we have italicized above, which states that "[t]he touching need not be done in a lewd or sexual manner," was removed from CALCRIM No. 1110 in 2013. (Compare CALCRIM No. 1110 (April 2011 ed., with CALCRIM No. 1100 (February 2013 ed.).)[4] The change was made after the Second District, in *People v. Cuellar* (2012) 208 Cal.App.4th 1067 (*Cuellar*), when considering an identically-worded instruction (CALCRIM No. 1120),[5]

---

[4] The written instruction given to the jury expressly states that it is the version of CALCRIM 1110 revised April 2011.

[5] CALCRIM No. 1120 describes the crime of continuous sexual abuse of a child under the age of 14 years in violation of section 288.5, subdivision (a).

"urge[d] that the Judicial Council's Advisory Committee on Criminal Jury Instructions reconsider the language of this sentence." (*Cuellar,* at p. 1071.) For reasons that are not explained in the record, the trial court instructed the jury with the version of CALCRIM No. 1110 from 2011, even though subsequent revisions to CALCRIM No. 1110 were made in February 2013 and August 2014. Price's trial took place in 2024.

Citing *Cuellar, supra,* 208 Cal.App.4th 1067 and other authority, Price contends that the trial court prejudicially erred and violated his constitutional rights to due process and a jury trial by instructing the jury that "[t]he touching need not be done in a lewd or sexual manner."

"A claim of instructional error is reviewed de novo. . . . In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Mitchell* (2019) 7 Cal.5th 561, 579 (*Mitchell*), citations omitted.)

As an initial matter, the People argue that Price forfeited his challenge to the instructional language because he did not raise it in the trial court. In most circumstances, failure to object to an instruction results in the forfeiture of an appellate challenge. (*Mitchell, supra*, 7 Cal.5th at p. 579.) However, failure to object to instructional error will not result in forfeiture if the substantial rights of the defendant are impacted. (*Ibid.*) " ' "Ascertaining

That statute is violated by multiple continuous lewd and lascivious acts in violation of section 288 and thus is described in CALCRIM No. 1120 with instructional language that overlaps with CALCRIM No. 1110.

whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice." ' " (*People v. Franco* (2009) 180 Cal.App.4th 713, 719.) Accordingly, we will consider Price's appellate argument to determine whether his substantial rights were impacted.

Turning to Price's challenge to the instructional language, Price points out that a violation of section 288, subdivision (a) exists when the defendant "willfully and *lewdly*" commits any lewd or lascivious act on a child under the age of 14 with the required intent. (§ 288, subd. (a), italics added.) According to Price, "to tell the jury that the act need not be done in a lewd manner, at best, leads to a high probability of confusion and, at worst, expressly removes an element of the charged offense from the jury's consideration."

In *People v. Sigala* (2011) 191 Cal.App.4th 695, 700 (*Sigala*), addressing identical language in former CALCRIM No. 1120, the court rejected the same argument that Price makes here. Specifically, *Sigala* concluded that "[r]ead as a whole" the instruction accurately stated the law. (*Sigala*, at pp. 700–701.)[6] The court in *Cuellar* was not persuaded by *Sigala*'s analysis. (*Cuellar, supra*, 208 Cal.App.4th at p. 1071.) *Cuellar* explained that the instructional language was "unfortunate and possibly

---

[6]   *Sigala* concluded that the challenged language reflected our Supreme Court's holding in *People v. Martinez* (1995) 11 Cal.4th 434, 442 that "section 288 is violated by 'any touching' of an underage child committed with the intent to sexually arouse either the defendant or the child," regardless of the body part that is touched. (*Sigala, supra*, 191 Cal.App.4th at p. 701.) Further, in determining the instruction was correct as a whole, *Sigala* focused on the part of the instruction stating that the willful touching must be "accomplished with the intent to sexually arouse the perpetrator or the child." (*Id.* at p. 701.)

confusing" because, "[t]aken by itself" the sentence at issue was "capable of the construction defendant suggests," namely, that the challenged sentence "negates the requirement that the touching be done in a lewd or lascivious manner." (*Cuellar, supra*, at p. 1071.) Therefore, as *Cuellar* concluded, "[i]t may be that, 'read as a whole' the sentence does no harm, although we think that is subject to question. It certainly does no good." (*Ibid*.) *Cuellar* suggested a revision to the instructional language, but in the specific context of the case before it, *Cuellar* decided that "taken as a whole, we are satisfied that the instruction as given did not mislead the jury in this case." (*Id*. at p. 1072.)

Here, we need not resolve the disagreement between *Cuellar, supra*, 208 Cal.App.4th 1067, and *Sigala, supra*, 191 Cal.App.4th 695, which is now more than a decade old and has been made largely irrelevant by the 2013 revisions to CALCRIM Nos. 1110 and 1120. As we will explain, even if the instructional language was erroneous, any error was harmless beyond a reasonable doubt in the context of this case. (See *People v. Cannata* (2015) 233 Cal.App.4th 1113, 1116, 1125 [concluding that even if there was error in instructing with versions of CALCRIM Nos. 1110 and 1120 that stated the touching "need not be done in a lewd or sexual manner," the error was harmless in light of the conduct at issue, which could not reasonably be viewed as "innocuous"].)

Assuming, as Price argues, that the purported instructional error implicates his federal constitutional rights by omitting an element of the crime, we review for harmless error under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 23.) (*People v. Lamb* (2024) 16 Cal.5th 400, 448.) " '[W]e ask whether we can conclude beyond a reasonable doubt that "the jury verdict would have been the same" had the jury been instructed on

the missing element.' " (*Id*. at p. 449.)  " 'Our task . . . is to determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." ' " (*Ibid*.)

The element that Price contends was omitted was the requirement that he acted "lewdly" in his conduct toward Jane Doe.  However, because there was no evidence at trial that Jane Doe might have wrongly interpreted an innocent touch by Price as sexual conduct, the disputed question for the jury was not whether Price's touching of Jane Doe was lewd or sexual in nature, but rather whether that touching occurred at all.  Jane Doe testified that Price treated her as a girlfriend for a year and regularly engaged in sexual conduct with her.  Price denied that he ever had any intentional sexual contact with Jane Doe, and that the only instance of possibly sexual touching was when he forcefully pushed Jane Doe away after she climbed on him while he was asleep.  The jury obviously credited Jane Doe's version of events, not Price's, because it found Price guilty of 10 counts of committing lewd acts against Jane Doe.  As such, like the court concluded in *Sigala*, "[a]ny error in defining the nature of the prohibited touching in this case would necessarily be harmless, as the conduct described by the victim[ ] was unquestionably of a sexual nature.  There is no evidence in the record that defendant's repeated molestations . . . were innocent touchings without the intent of sexual gratification."  (*Sigala, supra*, 191 Cal.App.4th at p. 702; see also *Cuellar, supra*, 208 Cal.App.4th at p. 1072 [noting that the challenged language in CALCRIM No. 1120 was not erroneous in the context of the defendant's trial because "all of the touching described in the testimony was sexual, rather than incidental, in nature"].)

In short, the conduct for which Price was prosecuted constituted conduct that was unquestionably sexual.  Because Price's theory at trial was

23

that the alleged conduct did not occur at all, rather than that it was innocent and innocuous, we conclude, beyond a reasonable doubt, that the jury would have reached the same verdict had it not been instructed that "[t]he touching need not be done in a lewd or sexual manner."

DISPOSITION

The judgment is affirmed.


IRION, Acting P. J.

WE CONCUR:



DO, J.



CASTILLO, J.

24